IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-05044-01-CR-SW-BP |
| | ) | |
| ANDREW J. SISCO, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTIONS TO SUPPRESS</u>**

On December 8, 2015, Defendant Andrew J. Sisco was indicted for being a felon in possession of a firearm, receiving an unregistered automatic machine gun, and possessing an unregistered silencer. (Doc. 1.)

Defendant filed motions to suppress evidence seized as a result of two search warrants issued on August 26, 2015, following Defendant's arrest on an Arkansas warrant. (Docs. 28, 29.) The first warrant was issued for three storage units at Neosho RV Boat and Mini Storage. (Doc. 30-1.) The second warrant authorized a search of Defendant's residence and was obtained after the execution of the search of the storage units. (Doc. 31-2.) Defendant's motions allege that the applications and supporting affidavits "wholly lack probable cause and any nexus to the places designated to be searched, thus violating Mr. Sisco's Fourth Amendment right against unreasonable search and seizure." (Doc. 28, p. 1, Doc. 29 p. 1.)

Defendant also filed a Motion to Suppress Custodial Statement. (Doc. 30.) Defendant argues that his verbal and written statements should be excluded from evidence at trial as they were the product of an unconstitutional search and seizure of Defendant in violation of the Fourth and Fourteenth Amendments. Defendant also contends that the statements were not

voluntary and were obtained in violation of defendant's Fourth, Fifth and Sixth Amendment rights.

The Honorable David P. Rush, Magistrate Judge for this District, held a hearing on September 7, 2016, and he issued two Reports and Recommendations ("the Reports") on January 11, 2017 recommending that the Motions to Suppress be denied. (Docs. 46, 47.) Defendant has objected to the Reports. (Docs. 50, 51.) The Government has not responded to Defendant's objection, and the time for doing so has passed. Local Rule 74.1(b)(2). [1]

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript from the hearing, and the exhibits admitted during the hearing. Having conducted this review, the Court adopts the Reports in their entirety as the Orders of the Court and denies the Motions to Suppress. Given the Reports' thoroughness there is no need for extended discussion.

## I. BACKGROUND

Deputy David Mace was on patrol by himself between 1:00 and 2:00 a.m. on August 26, 2015. (Doc. 42, pp. 4, 33.) At approximately 1:25 a.m. while driving north on Highway 59, he saw a vehicle parked outside a storage lot with its headlights on. (Doc. 42, pp. 4, 8.) Deputy Mace turned around at the next intersection and drove back to the vehicle. (Doc. 42, p. 5.) When he returned, the vehicle's headlights were off, which was significant to the deputy as it occurred to him that the individuals there had seen him drive by and they turned their headlights off to possibly conceal themselves. (Doc. 42, p. 34.) Deputy Mace observed a female, who identified herself as Angela Sisco, near the vehicle going through what looked like rummage sale

---

[1] On March 28, 2017, Defendant pled guilty to Count I—being a felon in possession of a firearm. (Doc. 53.) Defendant's plea was not conditioned on the resolution of the motions to suppress. (Doc. 56.) The plea was accepted on April 12. (Doc. 58.)

2

items or items that had come from a storage locker. (Doc. 42, pp. 5, 10.) Deputy Mace stopped to talk to her and she consented to a search of her vehicle. (Doc. 42, pp. 5, 7.)

As Deputy Mace was searching the vehicle, he noticed a man, later identified as Defendant Andrew Sisco, approaching from the inside of the fenced area around the storage sheds. (Doc. 42, p. 7.) Ms. Sisco said that the individual was her son. (Doc. 42, p. 8.) Deputy Mace approached the chain link fence and asked Defendant to identify himself. (Doc. 42, p. 9.) Defendant did not comply with his request. (Doc. 42, p. 9.) The deputy asked him to identify himself several times. (Doc. 42, p. 33.) When Deputy Mace asked Defendant why he was there at this time of the morning, Defendant stated that it was a twenty-four hour access facility and Defendant has a storage shed. (Doc. 42, pp. 10, 28.) Deputy Mace testified that he felt it was important to identify Defendant because it appeared to him that a burglary or some other crime was being committed. (Doc. 42, p. 10.)

Deputy Mace asked Defendant for the key pad access code to the gate, but Defendant would not provide it. (Doc. 42, pp. 11, 25.) The deputy was able to push the gate open just wide enough so that he could fit through. (Doc. 42, p. 11.) Deputy Mace testified that an individual could have pushed their way into the facility, as he did, without actually opening the gate. (Doc. 42, p. 11.) After pushing open the gate and going inside, Deputy Mace put Defendant in handcuffs. (Doc. 42, p. 13.) The deputy frisked him for weapons and then removed his wallet from his back pocket in order to identify him. (Doc. 42, p. 13.) Deputy Mace located an ID in the wallet that matched Defendant. (Doc. 42, p. 14.) He ran that ID through dispatch for warrants and also used that information to contact the business to see if Defendant had a storage unit. (Doc. 42, p. 14.) After running the information through dispatch, it returned with felony

warrants out of Benton County, Arkansas. (Doc. 42, p. 15.) Defendant was placed under arrest as a result of the Arkansas warrants. (Doc. 42, p. 15.)

After Defendant was arrested, officers sought a search warrant for his storage units. The affidavit, (Doc. 28-1, pp. 3-4), begins by stating that Defendant was arrested on August 26, 2015 at a storage unit facility at which Defendant had three storage units. The affidavit also details two previous arrests of Defendant. At the first arrest on August 9, 2014, an inventory search revealed ten grams of methamphetamine, a gun, and keys to storage units. At the second arrest on January 22, 2015, Defendant had some pills, a glass pipe for smoking methamphetamine, an unidentified number of empty baggies, and a leafy substance believed to be marijuana. Defendant was also a suspect in an "ongoing investigation of moving large amounts of Methamphetamine from Wichita Kansas to Neosho Missouri" and had been tracked going back and forth between Wichita and Neosho. The warrant also states that "[w]e have several sources of information stating that [Defendant] goes to Kansas and brings back large amounts of methamphetamine and stores it at the storage units." Finally, the warrant states that a source indicated that Defendant received a money order in June 2015 for an unspecified amount from David Mitchell, who was arrested on August 18, 2015 after a search of his vehicle revealed 15.9 grams of methamphetamine. Mitchell was charged with drug trafficking. Mitchell was arrested at the same storage facility as Defendant and also had storage units there.

After officers received a search warrant for Defendant's storage units and searched them, officers applied for a warrant to search Defendant's residence. The affidavit in support of the search warrant for Defendant's residence contained the same information in the affidavit for the search of the storage units and added the following information:

> On August 26, 2015, deputies served a search warrant on three storage units that are being rented to Andrew Sisco and located three stolen motorized vehicles,

packaging that appears to be for a large quantity of narcotics, and several items of drug paraphernalia. (Doc. 29-1, p. 3.)

I offer the opinion that the above listed residence has been used for furtherance of illegal drug activity.

Meanwhile, Detective Travis Spencer, a narcotics detective with the Newton County Sheriff's Department, along with another detective, Chad Harris, interviewed Defendant at 9:30 a.m. on the morning of August 27, 2015. (Doc. 42, p. 68, 70.) The interview was recorded, Gov. Ex. 3, and the Court has reviewed the video. At the beginning of the interview, Defendant was read his Miranda rights, and he waived those rights and agreed to speak to the detectives. The interview began around 9:30 a.m. and lasted a little less than an hour. (Doc. 42, p. 70.) The video recording of the interview shows that Defendant never invoked his Miranda rights, never asked that the detectives stop questioning him, and never indicated that he was not aware of what was going on. Detective Spencer testified that he was aware that Defendant was familiar with the criminal justice system and had prior convictions. (Doc. 42, p. 71.) Detective Spencer testified that he had no indication that Defendant was under the influence of alcohol or illegal substances and the video reveals none. (Doc. 42, p. 72.) Although Defendant can be seen yawning in the videotape of the interview, he never indicated he was too sleepy to continue or that he wanted to go to bed. Defendant never indicated he had been denied water or was somehow physically inhibited such that he could not answer questions. In response to questioning, Defendant admitted to possessing firearms at both the storage unit and his residence. Defendant also wrote out a statement explaining his mother was not involved with any of the stolen property.

5

## II. DISCUSSION

### A. Good Faith Exception

Even if an affidavit in support of a search warrant fails to provide probable cause, evidence seized pursuant to the warrant will not be suppressed if it appears that the officers executing the warrant were acting in "objectively reasonable reliance" on a warrant issued by a neutral judge. *United States v. Leon*, 468 U.S. 897, 922 (1984). Judge Rush concluded that the officers acted in good faith when they relied on the search warrants to conduct a search of Defendant's storage units and residence. (Doc. 46, p. 5.) Judge Rush found that the affidavits contained sufficient information to support the good faith exception. The affidavits contained information about (1) Defendant's two arrests in the past year involving methamphetamine, guns, and empty baggies; (2) Defendant's suspicious behavior at the storage units on August 26; (3) an ongoing investigation of drug trafficking between Wichita and Neosho; (4) information that the Defendant traveled between Wichita and Neosho; and (5) Defendant's connection to David Mitchell who had recently been arrested for drug trafficking. The Court agrees that this is sufficient to support the good faith exception.[2]

Defendant argues that the affidavits and testimony by the officers fail to satisfy the "good faith" exception to probable cause. Defendant invokes three exceptions to the good-faith exception, contending: (1) no reasonably well-trained officer could rely on the warrant, as it was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (2) the judge wholly abandoned his neutral and detached position and acted as a rubber stamp; (3) the warrant itself is so facially defective that the executing officer cannot presume its validity. *See United States v. Leon*, 468 U.S. at 922-23.

---

[2] The Court assumes for purposes of discussion only that probable cause was lacking. "[B]efore reviewing the existence of probable cause, we may consider the applicability of the good-faith exception to the exclusionary rule, as established in Leon." *United States v. Proell,* 485 F.3d 427, 430 (8th Cir. 2007).

The good faith inquiry is confined to the "objectively ascertainable question" of whether a reasonably well trained officer should have known that the search was illegal despite the issuing judge's authorization. See *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008); *United States v. Puckett*, 466 F.3d 626, 629-30 (8th Cir. 2006). "Ordinarily, a police officer cannot be expected to question a judge's probable cause determination." *United States v. Murphy,* 69 F.3d 237, 241 (8th Cir. 1995) (citation omitted). Considering the totality of the facts and inferences, it was objectively reasonable for the officers to believe the search warrants were valid. Additionally, there is no indication that the state court judge abandoned his neutral and detached role in issuing the warrant. Although Defendant challenges the specificity of affidavits, the Court has no reason to believe the officers were dishonest or reckless in preparing the affidavit.

## B. *Terry* Stop

Where a police officer has reasonable suspicion that criminal activity may be afoot, the officer may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion. *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)(citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Judge Rush concluded that Deputy Mace had reasonable suspicion to conduct a *Terry* stop. Judge Rush also concluded that although Deputy Mace violated the Fourth Amendment when he removed Defendant's wallet and identification during a pat-down search, the valid Arkansas warrant attenuated the connection between the violation and both the discovery of the evidence in the storage units and residence and his statements during the custodial interview.

Defendant contends that there was no probable cause or reasonable suspicion of criminal activity sufficient to support a *Terry* stop and that the discovery of his identity should be

suppressed. Defendant also argues that his custodial statement and evidence seized pursuant to the subsequent search warrants for his storage units and residence should be suppressed due to the Fourth Amendment violation.

The Court agrees with Judge Rush that the officer had reasonable suspicion to stop Defendant. While on patrol in the early morning, Deputy Mace observed an individual, Angela Sisco, standing next to a car with its headlights on while she rummaged through items outside of a locked self-storage facility. The car headlights were then switched off when Deputy Mace circled back around. Ms. Sisco appeared nervous and she did not reveal that anyone else was with her. Defendant then approached from inside the facility, but would not identify himself or give the officer the code to get in to the facility. Deputy Mace was able to squeeze through the fence which suggested that Defendant could have done the same. Deputy Mace was concerned that Defendant was involved in a burglary. These facts provide reasonable suspicion for the deputy to stop Defendant. For the same reasons, the Court also finds that Deputy Mace had reasonable suspicion to perform a frisk.

Defendant contends that the deputy exceed the parameters of a *Terry* stop when he searched Defendant's wallet for some form of identification. The Court agrees with Judge Rush that the deputy's search and seizure of identification documents during a *Terry* stop was a violation of the Fourth Amendment. However, the attenuation doctrine from *Utah v. Strieff,* 136 S. Ct. 2056 (2016), applies. As in *Strieff,* here there was a Fourth Amendment violation that led to the discovery of Defendant's identity, which in turn led to the discovery of a valid arrest warrant. In *Strieff* the defendant sought to suppress drugs and drug paraphernalia found during a search incident to a valid arrest warrant. Here, Defendant seeks to suppress statements during a custodial interview after being arrested on a valid arrest warrant and evidence found pursuant to

valid search warrants. However, the only information procured as a result of the constitutional violation was Defendant's name. The valid arrest warrant attenuated the connection between the constitutional violation and Defendant's statements over 24 hours later. Thus, suppression of Defendant's statements is not appropriate. Additionally, the only information in the search warrants that resulted from the constitutional violation was Defendant's name. Thus, suppression of the product of the search warrants is not required.

### C. Custodial Statement

Judge Rush concluded that Defendant's statements during the custodial interrogation were voluntary. Defendant seeks to exclude his videotaped statement on the grounds it was not voluntary. Defendant contends that he would not have made the inculpatory statements seen on the video had he not been "sleep-addled and confused about the purpose of the interview." [3] (Doc. 51, p. 3.) Defendant argues that "[i]n his drowsy state he was incapable of knowingly assenting to being interviewed" and "his will to remain silent was overborne by the investigators' conduct of the interview under circumstance in which Mr. Sisco was not fully awake." (Doc. 51, p. 3.)

The Court has reviewed the videotape, Gov. Ex. 3, and finds that Defendant's arguments are without merit. At the beginning of the interview, Defendant was advised of his constitutional rights and Defendant agreed to talk to the detectives. The interview began at 9:30am and lasted approximately fifty minutes and shows the officers and Defendant conversing in polite conversational tones. Although Defendant is seen yawning at several points in the video, there is nothing further to demonstrate that Defendant was sleep-addled. Defendant never indicated that he was not aware of what was going on. Further, it is clear from the video that the defendant was familiar with the criminal justice system as he indicated he had a pending case in Newton County

---

[3] Defendant specifically states that he does not assert that he was sleep deprived. (Doc. 51, p. 3.)

with an upcoming court date. Thus, the Court denies Defendant's Motion to Suppress Custodial Statement, Doc. 30, and adopts Judge Rush's Report. (Doc. 47.)

### III. CONCLUSION

For these reasons, the Court **ADOPTS** Judge Rush's Reports and Recommendations, Docs. 46, 47, and **DENIES** the Motions to Suppress. (Docs. 28, 29, 30.)

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: June 20, 2017                    UNITED STATES DISTRICT COURT